UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER MICHAEL MABIE,<br><br>    Plaintiff,<br><br>    v.<br><br>T. HOGAN, et al.,<br><br>    Defendants. | Case No. 1:16-cv-01035-MJS (PC)<br><br>**ORDER DENYING PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL**<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 1)**<br><br>**THIRTY DAY DEADLINE TO AMEND** |

Plaintiff Peter Michael Mabie, a prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 18, 2016. (ECF No. 1.) Plaintiff's complaint is before the Court for screening. He has consented to Magistrate Judge jurisdiction. (ECF No. 5.) No other parties have appeared.

Also before the Court is Plaintiff's request for the appointment of counsel. (ECF No. 1 at 15.)

**I.    Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28

U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

2

### III. Plaintiff's Allegations

Plaintiff is currently incarcerated at the Golden State Modified Community Correctional Facility ("GSMCCF") in MacFarland, California, where his claims arose.[1]

Plaintiff brings this suit against twenty-one Defendants: (1) Correctional Lieutenants ("Lts.") T. Hogan, Holts, and Acheson; (2) Captain ("Capt.") Bodinsky; (3) Correctional Officers ("COs") M. Perez, M. Corona, Chavez, and Gholston; (3) Warden W. Wilson; (4) Associate Warden D. Meyer; (5) Correctional Counselor II ("CCII") J. Marshall; (6) Appeals Coordinators J.W. Moss and T. Tabor; (7) Sergeants Gutierrez and Baker; (8) the GEO Group, Inc.; (9) GEO Group President and CEO G. Zoley; and (10) M. Voong, M. Williams, D. Artis, and Henne.

Plaintiff's multiple claims arise from numerous unrelated events. He alleges violations of the First, Eighth, and Fourteenth Amendments, as well as a failure to enforce and promulgate "policy", conspiracy, assault, libel and slander. Plaintiff seeks compensatory damages and punitive damages including "personal fines, demotions, suspensions and terminations." He also asks that all CDCR personnel and contractors be required to wear body cameras when interacting with inmates.

Plaintiff's factual allegations are as follows:

1. On December 18, 2015, Lt. Hogan hit Plaintiff in the back of the head with a blunt object while Plaintiff was sleeping. When Plaintiff complained to Lt. Hogan, she said "oh well, get over it!" Plaintiff continues to suffer the effects of this head trauma, including pain, soreness, dizziness, trouble sleeping, stress, and anxiety. Plaintiff reported Lt. Hogan's conduct to the floor officer, CO Corona. CO Corona refused to log the incident or permit Plaintiff to speak to Capt. Bodinsky.

2. The next day, Plaintiff was called to Capt. Bodinsky's office. Capt. Bodinsky chastised Plaintiff for trying to cause trouble. After Plaintiff explained what happened with

---

[1] GSMCCF is a private prison operating under contract with the California Department of Corrections and Rehabilitation. Under § 1983, "a state prisoner may sue a private prison for deprivation of constitutional rights." See Lugar v. Edmonson Oil Co., 457, U.S. 922, 936-937 (1982) (permitting suit under § 1983 against private corporations exercising "state action.")

3

Lt. Hogan, Capt. Bodinsky conducted a videotaped interview with Plaintiff. Sometime later, Capt. Bodinsky told Plaintiff he would need to re-record the interview. Plaintiff stated his head hurt and asked to do the interview later. Capt. Bodinsky refused Plaintiff's request, ignored Plaintiff's request for medical care, and forced Plaintiff to do the interview. Capt. Bodinsky also interviewed two inmate witnesses to the incident. On December 27, 2015, Plaintiff submitted a CDCR Form 22 to Capt. Bodinsky requesting copies of his witness statements. He did not receive them.

3. On December 21, 2015, Plaintiff attempted to send legal mail to the Office of the Inspector General regarding Lt. Hogan's assault. CO Perez opened Plaintiff's mail, read it, and told Plaintiff he would have to send it via regular mail. When Plaintiff objected, CO Perez became agitated and belligerent, threw Plaintiff's mail at Plaintiff, striking him, and slammed the mailroom window in Plaintiff's face. On March 18, 2016, CO Perez again opened and read Plaintiff's legal mail without permission.

4. Plaintiff reported the December 21 incident involving CO Perez to Capt. Bodinsky that same day; Capt. Bodinsky told Plaintiff to stop making a big deal out of nothing. On or around December 28, 2015, Plaintiff submitted a CDCR Form 22 to Capt. Bodinsky requesting that he follow up on the CO Perez incident.

5. On January 4, 2016, CCII Marshall berated Plaintiff for submitting grievance forms ("602s") against Lt. Hogan and CO Perez. CCII Marshall asked Plaintiff "what the hell" his problem was and told Plaintiff he "need[ed] to stop causing [expletive] problems." Capt. Bodinsky was also present.

6. On January 4, 2016, Defendant Lt. Holts placed Plaintiff in a holding cell and berated Plaintiff for filing 602s against Lt. Hogan and CO Perez. Plaintiff began to feel anxious and asked to see a Nurse. Instead, Lt. Holts brought Defendant CO Chavez into the cell, and CO Chavez began berating Plaintiff as well. Plaintiff repeated that he wanted to see a nurse. Ten minutes later a nurse arrived.

7. On January 5, 2016, Plaintiff was temporarily transferred to North Kern State Prison for a medical evaluation. When Plaintiff returned on January 13, 2016, he

was rehoused in a bunk located directly beneath a leaky ceiling. Plaintiff requested a bed move from non-defendant "R&R" staff who handled bed moves, as well as from Lt. Hogan, Lt. Holts, and the Inmate Advisory Council (not a Defendant). Plaintiff's request was refused and he was forced to sleep in a bunk that got wet when it rained. Several of Plaintiff's belongings were ruined by the rainwater. Plaintiff finally moved to a different bed when, on January 20, 2016, a doctor gave Plaintiff a lower bunk assignment.

8. On January 14, 2016, Plaintiff learned that he would not be able to return to his job as a porter and that he had been removed from the kosher diet meals list. On January 24, 2016, Plaintiff submitted a CDCR Form 22 to Associate Warden Meyer to ask why he had been removed from the kosher diet program. Plaintiff did not receive a response.

9. On January 26, 2016, Lt. Hogan entered Plaintiff's housing unit, "bumped" him, and removed a portion of Plaintiff's clothesline. The next day, Lt. Hogan again came into Plaintiff's housing unit and removed the rest of the clothesline. When Plaintiff told her that he felt singled out and retaliated against, Lt. Hogan stated "602 me!" When Plaintiff asked for a property receipt for his clothesline, she said "no, 602 that too!" Plaintiff reported the incident to Sgt. Baker, who told Plaintiff there was nothing he could do. The following day, Plaintiff asked CO Gholston for permission to speak to Capt. Bodinsky about the clothesline incident. CO Gholston denied Plaintiff's request and told Plaintiff that if he had a problem he should 602 it. That same day, Plaintiff complained to Lt. Holts about the events that had occurred from January 13, 2016 up to that day. Lt. Holts assured Plaintiff he would speak with Lt. Hogan.

10. On January 28, 2016, Plaintiff received a response to his CDCR Form 22 requesting copies of his 602s and witness statements. Although the response purported to pertain to a grievance filed against CO Perez, the log number on the documentation related to a grievance filed against Lt. Hogan, leading Plaintiff to believe that Appeals Coordinators T. Tabor and J.W. Moss falsified his documents to "cover up" the grievance filed against Lt. Hogan. On March 12, 2016, Lt. Acheson and Associate Warden Meyer

interviewed Plaintiff about the 602 Plaintiff filed against CO Perez. After Plaintiff learned that Lt. Acheson was not the Appeals Coordinator, Plaintiff stated he would not speak to Lt. Acheson about the incident. Associate Warden Meyer excused Lt. Acheson and conducted the interview on her own, during which she attempted to justify the above discrepancy as a clerical error.

11. On March 4, 2016, Plaintiff met with Warden Wilson and Lt. Holts, who informed Plaintiff that he was not allowed to enlist the help of an inmate named Neely to help him draft complaints. When Plaintiff stated that that was incorrect, Warden Wilson said that things would be changing at GSMCCF under her watch.

12. On March 31, 2016, Capt. Bodinsky, CO Perez, Sgt. Gutierrez, and Associate Warden Lavallee (not a defendant) accused Plaintiff and two other inmates of harassing CO Perez. Plaintiff denied the allegation, and stated that CO Perez was improperly reading inmates' legal mail. Sgt. Gutierrez grew belligerent and began swearing and stating that CO Perez was free to scan the contents of inmates' mail.

**IV. Discussion**

  **A. Misjoinder of Claims under Rule 18(a)**

Plaintiff raises multiple unrelated claims against multiple Defendants. A plaintiff may not proceed on myriad unrelated claims against different staff members in one complaint:

> "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)."

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

  Though Plaintiff's claims may have evolved from Lt. Hogan's alleged use of force,

the specific instances at issue do not arise from the same or even related transaction. Plaintiff will not be permitted to proceed with a "mishmash of a complaint." Id. His complaint will therefore be dismissed with leave to amend. The Court will advise Plaintiff of the pleading standards for each of the legal theories he puts forth to aid him in drafting his amended complaint. Plaintiff's amended complaint must comply with Rule 18(a); if it does not, the Court will choose which claims will proceed and will dismiss all unrelated claims.

### B. Scope of Relief

Plaintiff's request that Defendants be fined, demoted, suspended, or terminated is appropriately construed as a request for injunctive relief. In any civil action involving prison or jail conditions seeking prospective relief, the Court will grant only the relief necessary to correct the violations of the rights particular to the case. 18 U.S.C § 3626(a)(1)(A). "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Id. Furthermore, a federal court lacks jurisdiction to direct the actions of non-parties. Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties.") At present it appears that Plaintiff's desired relief, such as having Defendants disciplined, removed from their positions or demoted, and forcing the use of body cameras, extend well beyond the scope of this litigation and the jurisdictional reach of this Court.

### C. Linkage

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009). Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). Liability may not be imposed on supervisory personnel

7

under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77.  Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983 . . . 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)).

### D. Eighth Amendment

The Eighth Amendment protects prisoners from both excessive uses of force and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).

#### a. Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted).  For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted).

### b. Conditions of Confinement

To allege an Eighth Amendment claim for inhumane conditions of confinement, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010). "Deliberate indifference describes a state of mind more blameworthy than negligence" but is satisfied by something "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Plaintiff must demonstrate first that the seriousness of the risk was obvious or provide other circumstantial evidence that Defendants were aware of the substantial risk to his health, and second that there was no reasonable justification for exposing him to that risk. Lemire, 726 F.3d at 1078 (citing Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)) (quotation marks omitted).

Likewise, for Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

### E. Free Exercise of Religion

As it is not clear from Plaintiff's complaint if he required a kosher meal for religious reasons, the standard for a religious exercise claim appears below.

Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "Under the Constitution, 'reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'" Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (quoting Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972) (addressing the rights of convicted prisoners)).

"Restrictions on access to 'religious opportunities' . . . must be found reasonable in

light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates;' (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation)." Pierce, 526 F.3d at 1209 (quoting Turner v. Safley, 482 U.S. 78, 89-90 (1987)).

### F. Legal Mail

Prisoners have a "First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Furthermore, prison officials cannot read legal mail, although they may scan it and inspect it for contraband. Nordstrom v. Ryan, 762 F.3d 903, 906 (9th Cir. 2014).

The censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (limited by Thornburgh v. Abbott, 490 U.S. 401, 413–14 (1989), only as test relates to incoming mail).

### G. Due Process

The Due Process Clause protects individuals from being deprived of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1.

#### a. Processing of Grievances

Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the

grievance process may, in certain circumstances, implicate the First Amendment. Such a claim would be based on the theory that interference with the grievance process resulted in a denial of the inmate's right to access to the courts. This right includes petitioning the government through the prison grievance process. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356–57. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354–55.

Furthermore, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

### b. False Charges

"The Due Process Clause does not provide a guarantee that Plaintiff will be free from fabricated accusations." Saenz v. Spearman, No. CV-1:09-00557-GSA-YNP, 2009 WL 2365405, *8 (E.D. Cal. July 29, 2009). Rather, the Due Process Clause protects prisoners from being arbitrarily deprived of a liberty interest without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Hewitt v. Helms, 459 U.S. 460, 466 (1983). The prisoner must next establish that the prison failed to meet the minimal procedural requirements before depriving him of that interest. Wolff, 418 U.S. at 556. In the prison disciplinary context, the minimum procedural requirements that satisfy due

process are as follows: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

### c. Property

Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, the procedural component of the Due Process Clause is not violated by a random, unauthorized deprivation of property if the state provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). California provides such a remedy. Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§810-895).

Finally, a prisoner does not have a liberty or property interest in a prison job. West v. Beauclair, 338 Fed. App'x 716, 717 (9th Cir. 2009) (citing Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004).

### H. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). To make an Equal Protection Claim, an inmate must show either that Defendants intentionally discriminated against him on the basis of his membership in a protected class, see Hartmann, 707 F.3d at 1123; Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005), or that he received disparate treatment compared to other similarly situated inmates and there was no rational basis for that

12

difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

**I. Retaliation**

It is well-settled that § 1983 provides for a cause of action against prison officials who retaliate against inmates for exercising their constitutionally protected rights. Pratt v. Rowland, 65 F.3d 802, 806 n. 4 (9th Cir. 1995) ("[R]etaliatory actions by prison officials are cognizable under § 1983.") Within the prison context, a viable claim of retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his constitutional rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord* Watison v. Carter, 668 F.3d at 1114-15; Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Brodheim v. Cry, 584 F.3d at 1269.

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce, 351 F.3d at 1289 (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a complaint or grievance is constitutionally protected. Cruzan by Cruzan v. Dir., Missouri Dept. of Health, 497 U.S. at 278.

With respect to the fourth prong, the correct inquiry is to determine whether an official's acts "could chill a person of ordinary firmness from continuing to engage in the protected activity[]." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006); see also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals.'" Rizzo v. Dawson, 778 F.2d at 532.

### J. Conspiracy

A conspiracy claim brought under Section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the Court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. (internal quotations and citations omitted). As such, a bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

### K. California State Tort Claims

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," except as provided in subsections (b) and (c). "[Once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." ACI v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board ("the Board"), formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2009). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Super. Ct. of Kings Cty. (Bodde), 90 P.3d 116, 124 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Super. Ct., 90 P.3d at 124; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). An action must be commenced within six months after the claim is acted upon or is deemed to be rejected. Cal. Govt. Code § 945.6; Moore v. Twomey, 16 Cal. Rptr. 3d 163 (Cal. Ct. App. 2004). Should Plaintiff believe he can allege compliance with the Tort Claims Act, the standards for the tort claims of assault and battery, libel, and slander are below:

### 1. Assault and Battery

Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 240, 242 (West 2005); 5 B. E. Witkin, Summary of California Law, Torts § 346 (9th ed. 1988). For an assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch him in a harmful or offensive manner; (2) it reasonably

appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted). For battery, a plaintiff must show that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss, or harm to the plaintiff. Id. (citation and quotations omitted).

### 2. Libel and Slander

To establish a prima facie case for slander, a plaintiff must "demonstrate an oral publication to third persons of a specified false matter that has a natural tendency to injure or that causes special damages." Mann v. Quality Old Time Serv. Inc., 120 Cal. App. 4th 90, 106 (Cal. Ct. App. 2004). To constitute libel, the offending publication must be in writing. CIV. CODE § 45.

"In order to fall outside the scope of First Amendment protection, an alleged defamatory statement must 'contain a provably false factual connotation.'" Crowe v. Cty. of San Diego, 608 F.3d 406, 442 (9th Cir. 2010) (citing Gilbrook v. City of Westminster, 177 F.3d 839, 861 (9th Cir.1999)). Thus to make a cognizable claim, a plaintiff must show: (1) the statement implies an assertion of objective fact, and (2) that fact is false. Id.

## V. Request for Counsel

Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the court cannot require an attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the court will

seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

In the present case, the Court does not find the required exceptional circumstances. Even if it is assumed that Plaintiff is not well-versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This court is faced with similar cases almost daily. Further, at this early stage in the proceedings, the Court cannot make a determination that plaintiff is likely to succeed on the merits, and there is no indication that plaintiff cannot adequately articulate his claims. Id. Plaintiff's request for counsel will be denied without prejudice.

**VI. Conclusion**

Plaintiff's complaint will be dismissed as it contains unrelated claims against different Defendants. Fed. R. Civ. P. 20(a)(2). The Court will provide Plaintiff with the opportunity to file an amended complaint. If Plaintiff amends, he may only allege claims that (a) arise out of the same transaction, occurrence, or series of transactions or occurrences, and (b) present questions of law or fact common to all Defendants named therein. Fed. R. Civ. P. 20(a)(2). Plaintiff must file individual actions for unrelated claims against unrelated Defendants.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be

17

"complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's request for appointment of counsel (ECF No. 1) is DENIED without prejudice;
2. Plaintiff's complaint (ECF No. 1) is DISMISSED with leave to amend;
3. The Clerk's Office shall send Plaintiff a blank complaint form along with a copy of the complaint filed July 18, 2016;
4. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. File a notice of voluntary dismissal; and
5. If Plaintiff fails to comply with this order, the Court will dismiss this action for failure to obey a court order and failure to prosecute.

IT IS SO ORDERED.

Dated:   October 19, 2016            /s/ *Michael J. Seng*
                                     UNITED STATES MAGISTRATE JUDGE